TIMOTHY CHAN (Cal. Bar No. 303505)
MCX LEGAL LLP
3333 Michelson Drive, Suite 300
Irvine, California 92612
Telephone: (949) 343-9735
E-mail: timothylchan@gmail.com

Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSUE GUTIERREZ-CRUZ (A# 246-061-842),<br><br>Petitioner,<br><br>v.<br><br>WARDEN or FACILITY ADMINISTRATOR, Adelanto ICE Processing Center; ERNESTO SANTACRUZ, JR, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Attorney General of the United States,<br><br>Respondents. | Case No. 5:26-cv-________<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>DETAINED: IMMEDIATE RELIEF REQUESTED |

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Petitioner Josue Gutierrez-Cruz ("Mr. Gutierrez-Cruz"), by and through undersigned counsel, respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and alleges as follows:

## I. INTRODUCTION

1. Mr. Gutierrez-Cruz is 24 years old. For more than four years he has lived in Oxnard, California, where he shares a home with his longtime partner and their three-year-old United States citizen daughter, and where he worked steadily as a butcher. On June 25, 2026, a California criminal court — the only court ever to examine the misdemeanor charges against him — ordered him released. Federal immigration officers arrested him that same day. He has been confined at the Adelanto ICE Processing Center ever since.

2. In the nearly two months since, no judge has found — indeed, no judge has even been asked to find — that Mr. Gutierrez-Cruz is a danger to anyone or a risk of flight. Respondents have never brought him before a neutral decisionmaker for a custody determination of any kind. Instead, the arresting officer stamped three conclusory labels on his file: "Laken Riley Act — Mandatory Detention." "Likely to Abscond." "Public Safety Risk." No hearing preceded those labels. None has followed.

3. The mandatory-detention label is wrong as a matter of law. The Laken Riley Act mandates detention only where a noncitizen inadmissible under 8 U.S.C. § 1182(a)(6)(A), (6)(C), or (7) is charged with, arrested for, or convicted of "any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii). Mr. Gutierrez-Cruz is charged with none of these. He faces two pending misdemeanor counts arising from a single three-year-old domestic dispute: Corporal injury to a cohabitant, Cal. Penal Code § 273.5(a), and vandalism causing less than $400 in damage, Cal. Penal Code § 594(b)(2)(A). Vandalism is not burglary, theft, larceny, or shoplifting. And a bare § 273.5(a) charge is not a crime that "results in" death or serious bodily injury: That offense is complete upon any "traumatic condition," which California law expressly defines to include injuries "of a minor or serious nature." Cal. Penal Code § 273.5(d). Nothing in the charging documents or in Respondents' own records alleges death or serious bodily injury to anyone.

4. With the mislabel stripped away, Mr. Gutierrez-Cruz's detention rests on 8 U.S.C. § 1226(a) — the provision under which ICE issued the administrative warrant of arrest (Form I-200) that its officers executed. Detention under § 1226(a) is discretionary, and with it comes the right to an individualized custody determination. Mr. Gutierrez-Cruz has never received one. ICE set no bond. The immigration court has held no bond hearing. His confinement therefore violates the statute itself — and the Fifth Amendment, which does not tolerate indefinite civil detention without any hearing before a neutral decisionmaker. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to or without trial is the carefully limited exception.").

5. The equities Respondents never weighed are substantial: A United States citizen daughter who has not seen her father in nearly two months; a partner he intends to marry; four years of steady employment; a stable home; no criminal convictions of any kind; and DHS's own Form I-213 recording that he cooperated "freely and voluntarily," is in good health, and has no gang affiliation. The state court that actually evaluated the charges against him set him free. Respondents then jailed him indefinitely on a statutory label that does not fit.

6. Mr. Gutierrez-Cruz respectfully asks this Court to issue the writ and order his immediate release on his own recognizance.

## II. CUSTODY

7. Mr. Gutierrez-Cruz is in Respondents' physical custody at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301, in San Bernardino County, within this District. He has been detained there since on or about June 25, 2026, under color of the Immigration and Nationality Act ("INA").

## III. JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3), which extends the writ to any person "in custody in violation of the Constitution or laws or treaties of the United States," and under 28 U.S.C. § 1331 and Article I, Section 9, Clause 2 of the United States Constitution (the Suspension Clause). The Court may grant relief under 28 U.S.C. § 2243, the All Writs Act, 28 U.S.C. § 1651, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

9. No statute strips this Court of jurisdiction. Although 8 U.S.C. § 1226(e) shields certain "discretionary judgment[s]" from review, it does not bar review of the statutory and constitutional questions presented here — which provision of the INA authorizes Mr. Gutierrez-Cruz's detention, and what process the Constitution requires. *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

10. Venue is proper in the Central District of California, and this petition is properly filed in the Eastern Division, because Mr. Gutierrez-Cruz is confined at Adelanto, in San Bernardino County, and his immediate custodian is found there. *Rumsfeld v. Padilla*, 542 U.S. 426, 443–44 (2004).

## IV. PARTIES

11. Petitioner Josue Gutierrez-Cruz (A# 246-061-842) is a 24-year-old native and citizen of Mexico. He resides in Oxnard, California, and is the father of a three-year-old United States citizen daughter.

12. Respondent the Warden (or Facility Administrator) of the Adelanto ICE Processing Center — sued by official title, as is the practice in this District — heads the facility where Mr. Gutierrez-Cruz is detained and is his immediate custodian. Respondent is sued in his or her official capacity.

13. Respondent Ernesto Santacruz, Jr. is the Field Office Director (or Acting Field Office Director) of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, and in that capacity exercises authority over the arrest, detention, custody classification, and release of noncitizens detained at Adelanto. Respondent is sued in his or her official capacity.

14. Respondent Markwayne Mullin is the Secretary of Homeland Security and heads the department with ultimate authority over ICE and the administration of the immigration detention laws. He is sued in his official capacity.

15. Respondent Todd Blanche is the Attorney General of the United States and oversees the Executive Office for Immigration Review, whose immigration judges conduct custody redetermination hearings. He is sued in his official capacity.

## V. EXHAUSTION

16. Section 2241 contains no statutory exhaustion requirement, and prudential exhaustion is

excused where resort to the agency would be futile or where the petitioner would suffer irreparable injury from delay.

17. Exhaustion would be futile here. Respondents have already classified Mr. Gutierrez-Cruz as subject to "mandatory detention" on the face of their own Form I-213, and the immigration court is bound by Board of Immigration Appeals precedent directing that respondents charged as present without admission be treated as ineligible for bond redetermination. *See Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025); *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). District courts have repeatedly excused exhaustion as futile in exactly this posture. *See, e.g., Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), *aff'd*, No. 25-6842, — F.4th — (9th Cir. July 30, 2026). A bond request destined for administrative denial is not a prerequisite to the writ.

18. Each additional day of unlawful confinement is itself irreparable injury. Prudential exhaustion must yield.

## VI. STATEMENT OF FACTS

### A. Mr. Gutierrez-Cruz's Life in California

19. Mr. Gutierrez-Cruz came to the United States in 2022, at nineteen. By DHS's own account, he presented himself at the border near Tecate, California on May 1, 2022, and was granted a voluntary return to Mexico the same day; he re-entered without inspection near Nogales, Arizona on or about June 1, 2022 and has remained since. No order of removal — expedited or otherwise — has ever been entered against him. His only immigration charge is presence without admission or parole.

20. For the past four years he has built a quiet, productive life in Oxnard: A home he shares with his longtime partner, Natalie Juan Rodriguez; their daughter, Yeyetzin, a three-year-old United States citizen; and steady full-time work as a butcher for an Oxnard meat business, where he was employed until the day of his arrest. He is the family's primary provider.

21. His mother, in Veracruz, is battling cancer; his sister has special needs. He has no criminal convictions of any kind and, before June 2026, had never been booked into custody. DHS's Form I-213 records that he is in good health, has no gang affiliation or associations, and provided information to its officers "freely and voluntarily."

### B. The Three-Year-Old Incident and the Criminal Court's Release

22. In or about 2023, Mr. Gutierrez-Cruz and his partner had a single physical altercation. Who initiated it is disputed; there is a substantial self-defense and mutual-affray question. Police were called and took a report. Shortly afterward the couple separated and moved out of the apartment, losing access to its mail; they reconciled and moved back in together about a month later. Neither of them ever received notice that a warrant had issued. For three years the matter lay dormant — while Mr. Gutierrez-Cruz lived openly at the same address, worked, and raised his daughter.

23. On June 24, 2026, Mr. Gutierrez-Cruz was a passenger — not the driver — in a vehicle stopped by the Ventura County Sheriff. He was not intoxicated and was cited for nothing. Deputies ran his identification, discovered the outstanding misdemeanor warrant, and arrested him. He was booked into the Ventura County Jail on two misdemeanor counts: Corporal injury to a spouse or cohabitant, Cal. Penal Code § 273.5(a), and vandalism with damage under $400, Cal. Penal Code § 594(b)(2)(A). Both charges remain pending; he has been convicted of nothing and is presumed innocent.

24. On June 25, 2026, he was arraigned, pleaded not guilty, and was released by the criminal court while the charges remain pending — the considered judgment of the only judicial officer ever to review this record that Mr. Gutierrez-Cruz did not need to be caged.

### C. ICE's Arrest and the "Mandatory Detention" Stamp

25. ICE was waiting. On June 25, 2026, Enforcement and Removal Operations officers, armed with an administrative warrant of arrest (Form I-200) issued under INA § 236, 8 U.S.C. § 1226, arrested Mr. Gutierrez-Cruz at large in Ventura, processed him at the Camarillo ERO office, and transported him to the Adelanto ICE Processing Center.

26. The arresting officer's Form I-213 stamps three conclusory phrases across the narrative: "*Laken Riley Act — Mandatory Detention*," "*Likely to Abscond*," and "*Public Safety Risk*." The document contains no analysis supporting any of the three — no discussion of his daughter, his home, his employment, his lack of any conviction, or his cooperation. It records, in the same breath, that he answered every question freely, works full time, supports a citizen child, and claims good health. The only custody-related observation the officer wrote down was that Mr. Gutierrez-Cruz's "family will not be able to assist him in posting a bond."

27. DHS served a Notice to Appear charging a single ground: Inadmissibility under INA §

212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present without admission or parole. No criminal ground of inadmissibility or deportability is charged.

### D. Removal Proceedings — and No Custody Hearing, Ever

28. Mr. Gutierrez-Cruz is in removal proceedings under INA § 240 before the Adelanto Immigration Court (Immigration Judge Bryan E. Depowell). Undersigned counsel was retained on July 8, 2026 — two days before his first master calendar hearing — and entered an appearance the same day. The court granted a continuance on July 10, 2026; the next master calendar hearing is set for August 19, 2026.

29. In the entire period since his June 25, 2026 arrest — more than seven weeks — neither ICE nor any immigration judge has held a custody hearing, set a bond, or made any individualized determination that Mr. Gutierrez-Cruz's detention is justified. The court's electronic record of proceedings reflects no bond proceeding of any kind. His detention simply continues, by default and by stamp.

### E. Conditions of Confinement at Adelanto — Contaminated Drinking Water

30. Throughout his confinement at the Adelanto ICE Processing Center, Respondents have provided Mr. Gutierrez-Cruz drinking water that is contaminated with visible mold. Safe, potable drinking water is a basic human necessity, and Mr. Gutierrez-Cruz has had no meaningful alternative but to consume the contaminated water or go without.

## VII. CLAIMS FOR RELIEF

### A. Count One: Detention in Violation of the INA: Section 1226(a) Governs, and the Laken Riley Act's Mandatory-Detention Provision Does Not Apply (28 U.S.C. § 2241; 8 U.S.C. § 1226)

32. Mr. Gutierrez-Cruz realleges and incorporates each of the foregoing paragraphs.

33. Section 1226(a) is the default rule: On a warrant issued by the Secretary, a noncitizen "may be arrested and detained pending a decision on whether the alien is to be removed," and — except as provided in § 1226(c) — the noncitizen "may" be released on bond or conditional parole. 8 U.S.C. § 1226(a); *see* 8 C.F.R. §§ 236.1(d), 1236.1(d) (bond and custody redetermination); 8 C.F.R. § 1003.19 (immigration judge bond jurisdiction). ICE invoked precisely this authority: It arrested Mr. Gutierrez-

Cruz on a Form I-200 administrative warrant — the § 1226(a) instrument — and placed him in ordinary § 240 removal proceedings.

34. Section 1226(c) is a narrow exception to that default, and as amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), its new subparagraph (E) reaches only a noncitizen who:

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E). The Act adopts state-law definitions: The enumerated offense terms and "serious bodily injury" "have the meanings given such terms in the jurisdiction in which the acts occurred." Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025).

35. Neither pending charge comes within subparagraph (E). Vandalism, Cal. Penal Code § 594(b)(2)(A), is the malicious defacement or destruction of property — not a taking. It is not "burglary, theft, larceny, or shoplifting" under any reading, categorical or otherwise. It is not an assault on anyone, much less a law enforcement officer. And a sub-$400 property misdemeanor self-evidently is not a crime that "results in death or serious bodily injury."

36. Nor is the § 273.5(a) charge. Congress conditioned this final prong on result — a crime "that results in death or serious bodily injury to another person" — not on subject matter. A charge of corporal injury to a cohabitant establishes no such result: The offense is complete upon infliction of any "traumatic condition," a term the statute itself defines as a wound or injury "whether of a minor or serious nature." Cal. Penal Code § 273.5(d). California courts confirm that even a minor wound — a bruise, redness, or swelling — satisfies the element. *See People v. Abrego*, 21 Cal. App. 4th 133 (1993); *People v. Beasley*, 105 Cal. App. 4th 1078 (2003). The minimum conduct the charge encompasses is a minor injury. And in California — the jurisdiction whose definitions the Act expressly adopts — "serious bodily injury" means "a serious impairment of physical condition," such as loss of consciousness, concussion, or bone fracture. Cal. Penal Code § 243(f)(4). No charging document, police report, or DHS record in

this case alleges death or any such impairment as to anyone. An accusation that does not allege the statutory result cannot trigger mandatory detention keyed to that result. At a minimum, the rule of lenity and the canon of constitutional avoidance require the narrower reading: Mandatory civil detention without a hearing is a severe deprivation, and courts do not presume Congress swept three-year-old misdemeanor domestic disputes and petty vandalism into it. *Cf. Zadvydas*, 533 U.S. at 689–90.

37. The arresting officer's "Laken Riley Act — Mandatory Detention" stamp is a legal conclusion, entitled to no deference. Which statute authorizes a detention is a pure question of law that this Court reviews de novo on habeas. *Jennings*, 583 U.S. at 295–96; *Demore*, 538 U.S. at 516–17.

38. For the avoidance of doubt, § 1225(b) does not govern either. Mr. Gutierrez-Cruz was not apprehended at or near the border upon arrival; he was arrested in the interior, four years after entry, at his home community, on a § 1226 warrant, and placed in ordinary § 240 proceedings. Sections 1225 and 1226 are distinct detention schemes, *Jennings*, 583 U.S. at 288–97, and the government's own chosen instruments here — the I-200 warrant and the NTA — are creatures of § 1226 and § 240. To the extent Respondents rely on the Board's contrary precedent, *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the Ninth Circuit has now squarely rejected it: Section 1225(b)(2)(A) reaches only noncitizens apprehended while seeking entry at the border, and those apprehended in the interior — like Mr. Gutierrez-Cruz — are detained under § 1226(a) and remain eligible for individualized custody determinations. *Rodriguez Vazquez v. Bostock*, No. 25-6842, — F.4th — (9th Cir. July 30, 2026), *aff'g* 779 F. Supp. 3d 1239 (W.D. Wash. 2025). The Ninth Circuit does not stand alone: it has joined a lopsided consensus — seven courts of appeals and hundreds of district courts — rejecting the position that noncitizens who entered without inspection are categorically barred from bond hearings. *See, e.g., Guerrero Orellana v. Moniz*, — F.4th — (1st Cir. 2026).

39. Because § 1226(a) governs, Mr. Gutierrez-Cruz is entitled to an individualized custody determination. Respondents have provided none — no ICE custody review with bond authority honestly exercised, no immigration-court bond hearing. His continued detention without that process violates the INA, and the writ should issue.

### B. Count Two: Fifth Amendment Procedural Due Process: Nearly Two Months of Civil Detention Without Any Hearing Before a Neutral Decisionmaker

40. Mr. Gutierrez-Cruz realleges and incorporates each of the foregoing paragraphs.

41. The Due Process Clause applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Id.* at 690. Civil detention is permissible only with adequate procedural protections before a neutral decisionmaker. *Salerno*, 481 U.S. at 746, 750–52; *Foucha v. Louisiana*, 504 U.S. 71, 80–81 (1992).

42. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), every factor condemns Respondents' process here — because there has been no process at all. The private interest is fundamental physical liberty. The risk of erroneous deprivation is total: The sole "determination" in this record is a trio of conclusory stamps applied by the arresting officer, unsupported by any stated analysis and contradicted by the same document's own recitals of employment, family, health, and cooperation. And the government's burden in providing the missing process is negligible: Immigration judges sit at Adelanto and conduct custody hearings every day.

43. Due process required, at an irreducible minimum, a prompt individualized determination before a neutral decisionmaker, with the government bearing the burden of justifying detention by clear and convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011). Respondents provided nothing — no hearing, no findings, no decisionmaker. Detention imposed and maintained wholly without process cannot stand, and the remedy is release.

44. A federal court has already applied these principles to the Laken Riley Act on facts materially identical to Mr. Gutierrez-Cruz's: In *Doe v. Moniz*, No. [____] (D. Mass. Sept. 5, 2025) — the first decision to reach LRA mandatory detention — the court held that jailing an individual for roughly two months on the basis of a single, uncharged arrest, with no conviction and no individualized hearing, violates due process, and ordered his release unless a bond hearing was promptly held. So too here. Respondents' ongoing failure to provide any hearing violates the Fifth Amendment, and the violation compounds with each day of confinement.

### C. Count Three: Fifth Amendment Substantive Due Process — Punitive and Unconstitutional Conditions of Confinement (28 U.S.C. § 2241)

45. Mr. Gutierrez-Cruz realleges and incorporates each of the foregoing paragraphs.

46. Mr. Gutierrez-Cruz is a civil immigration detainee who has not been convicted of any crime. The Due Process Clause of the Fifth Amendment therefore forbids Respondents from subjecting him to conditions of confinement that amount to *punishment* of any kind. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *Zadvydas v. Davis*, 533 U.S. 678, 690–92 (2001). A condition is punitive where it is imposed with an intent to punish or is not reasonably related to a legitimate, nonpunitive governmental objective. *Bell*, 441 U.S. at 538–39.

47. Respondents owe those in their involuntary custody an affirmative duty to provide for basic human needs — including safe food and water, sanitation, and medical care. *Youngberg v. Romeo*, 457 U.S. 307, 315–16, 324 (1982); *Jones v. Blanas*, 393 F.3d 918, 931–32 (9th Cir. 2004) (civil detainees are entitled to conditions no more restrictive than necessary and to treatment more considerate than that afforded convicted prisoners). Access to potable drinking water is among the minimal civilized measures of life's necessities the Constitution guarantees. *See Johnson v. Lewis*, 217 F.3d 726, 731–33 (9th Cir. 2000).

48. A conditions-of-confinement claim brought by a non-convicted detainee is evaluated under an *objective* deliberate-indifference standard. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1069–71 (9th Cir. 2016) (en banc); *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). Petitioner must show that (i) Respondents made an intentional decision with respect to the conditions of his confinement; (ii) those conditions put him at substantial risk of suffering serious harm; (iii) Respondents did not take reasonable available measures to abate that risk, even though a reasonable official would have appreciated the high degree of risk involved; and (iv) by not taking such measures, Respondents caused his injuries. *Gordon*, 888 F.3d at 1125. Exposure to conditions posing an unreasonable risk of serious damage to future health is itself actionable. *See Helling v. McKinney*, 509 U.S. 25, 33–35 (1993).

49. Respondents' provision of mold-contaminated drinking water satisfies each element. The contamination created a substantial risk of serious harm to Mr. Gutierrez-Cruz's health; Respondents knew of the condition yet failed to take the obvious, reasonable step of supplying clean water or remediating its source; and their inaction served no legitimate governmental purpose. The condition is

therefore both objectively unreasonable and punitive, in violation of the Fifth Amendment.

50. Because these unconstitutional conditions render Mr. Gutierrez-Cruz's continued detention unlawful, and because Respondents have failed to remedy them, his confinement violates the Due Process Clause and the writ should issue. Habeas corpus is the appropriate vehicle to secure his release from such unlawful custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484–86 (1973); 28 U.S.C. § 2241(c)(3).

**D. Count Four: Release Is the Remedy Law and Justice Require (28 U.S.C. § 2243)**

51. Mr. Gutierrez-Cruz realleges and incorporates each of the foregoing paragraphs.

52. On habeas, this Court "dispose[s] of the matter as law and justice require." 28 U.S.C. § 2243. That includes ordering release outright, or on conditions, where the record could not sustain detention under any lawful standard.

53. This is such a record. The only court ever to assess these charges released him. He has no convictions. He has a citizen child, a partner, a home, four years of continuous residence and steady employment, and a demonstrated history of appearing and cooperating. DHS's own paperwork undercuts its stamps. Release on his own recognizance fully protects any legitimate interest in his appearance: He has a home, a family, counsel, a pending criminal matter he must attend, and an immigration case he has every incentive to fight — and win — from liberty.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

(a) Issue an order to show cause requiring Respondents to answer this Petition within three days, pursuant to 28 U.S.C. § 2243;

(b) Declare that Petitioner's detention is not authorized by 8 U.S.C. § 1226(c)(1)(E) or § 1225(b), and that his continued detention without an individualized custody determination violates 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment;

(c) Order Petitioner immediately released on his own recognizance;

(d) Enjoin Respondents from transferring Petitioner outside this District during the pendency of these proceedings;

(e) Award Petitioner reasonable costs and attorneys' fees under the Equal Access to Justice

Act, 28 U.S.C. § 2412; and

(f) Grant such other and further relief as law and justice require.

Respectfully submitted,

Dated: August 17, 2026

*/s/ Timothy Chan*
TIMOTHY CHAN

Attorney for Petitioner

**VERIFICATION**

I am an attorney for Petitioner Josue Gutierrez-Cruz. Petitioner is detained at the Adelanto ICE Processing Center and is unable to verify this Petition personally; I therefore verify it on his behalf pursuant to 28 U.S.C. § 2242. I have read the foregoing Petition, and the facts stated in it are true to the best of my knowledge, information, and belief, based on my review of the records of Petitioner's immigration and criminal proceedings, records produced by the Department of Homeland Security, and interviews conducted through Petitioner's family. I have also read the contents of this Petition to Petitioner, and he orally confirmed and verified its accuracy. I declare under penalty of perjury that the foregoing is true and correct. Executed on August ___, 2026, at Irvine, California.

Dated: August 17, 2026

*/s/ Timothy Chan*
TIMOTHY CHAN